UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                    Crim. Action No. 5:13-cr-53

Joshua Minix

## REPORT AND RECOMMENDATION
(Docs. 101, 114)

Joshua Minix has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him as a consequence of his plea of guilty to one count of engaging in a conspiracy with others to knowingly and intentionally distribute heroin, in violation of 21 U.S.C. § 846, and one count of possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3).[1]  (Docs. 101, 114;[2] see Doc. 100.)

In October 2014, Minix was sentenced by Chief United States District Judge Christina Reiss to a term of 87 months in prison, to be followed by a five-year term of supervised release.  (Doc. 103-1 at 39.)  Minix faced an advisory Sentencing Guideline

---

[1]  The Amended Judgment states that Minix was convicted of possession of a firearm "as a Drug Dealer."  (Doc. 100 at 1.)  The description of this offense is inaccurate, as 18 U.S.C. § 922(g)(3) contains no reference to a "drug dealer."  Rather, § 922(g)(3) makes it unlawful for a person who is "an unlawful user of or addicted to any controlled substance" to possess a firearm "in or affecting commerce."  The distinction is significant.  Although the statutory citation is correct, the description of the offense in the Amended Judgment could be misconstrued as reference to a violation of 18 U.S.C. § 924(c)(1)(A), which makes it unlawful for a person to possess a firearm during and in relation to "drug trafficking crime[s]."

[2]  Minix filed his initial § 2255 motion pro se on July 14, 2015.  (Doc. 101.)  Thereafter, counsel was appointed to represent Minix pursuant to the Criminal Justice Act, and an amended § 2255 motion was filed by counsel on Minix's behalf on February 12, 2016.  (Doc. 114.)  Counsel has since been permitted to withdraw.

imprisonment range of 360 months (*id.* at 31), but received a downward departure for his cooperation pursuant to USSG § 5K1.1 and benefitted from a further departure or variance for additional reasons stated on the record at the sentencing hearing (*id.* at 31–32; Doc. 103 at 50–51).

Minix now contends that the government "has not abided by all conditions as described in the plea agreement," as it "made no mention of [his] cooperation in [another criminal matter]" at the time of sentencing. (Doc. 101-1 at 4.) More specifically, Minix claims he has not received "fair or adequate credit or consideration for the substantial assistance he provided" in the criminal case against Devin Richardson and in related cases involving Richardson, Eric Dixon, and others. (Doc. 114 at 2–3.) Minix also contends that he received ineffective assistance from his attorney, William Kraham, before, during, and after the sentencing hearing. (*Id.* at 3–5.) Minix does not seek to have his guilty plea vacated, but rather, seeks a reduction in his sentence from 87 months to 60 months. (*Id.* at 6; Doc. 101-1 at 5.) For the reasons stated below, I recommend that Minix's amended § 2255 motion be DENIED.

## Background

### I.    Offense Conduct

Minix was an active participant in a large-scale conspiracy to transport heroin, cocaine base, and opiates from the metropolitan New York area to Rutland, Vermont to be sold in the Rutland County region. The presentence report (PSR) describes in detail the unlawful activities of Minix and the many participants in the conspiracy, including Devin Richardson. (*See* PSR ¶¶ 16–35.) According to the PSR, investigators used

cooperating individuals to accomplish controlled buys of drug evidence from Minix and others.  Search warrants were obtained for various Rutland locations, and tangible evidence–including drugs, currency, packaging material, firearms, and ammunition–was seized.  A grand jury investigation yielded testimonial evidence from persons with direct knowledge of the activities of the conspirators.  The PSR reveals that during the investigation, Minix attempted to obstruct justice by suborning perjury by two grand jury witnesses.  (*Id.* ¶¶ 37-39.)

## II.    Minix's Guilty Plea

In an Indictment filed on April 24, 2013, Minix was charged with two counts of knowingly and intentionally distributing heroin on March 29 and April 2, 2013, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 29.)  Attorney David McColgin was appointed to represent Minix under the Criminal Justice Act.  Despite Minix's early efforts to obstruct justice by suborning perjury, after being charged, Minix cooperated in the investigation "quickly and enthusiastically."  (Doc. 129-1 at 1.)

On September 5, 2013, a Plea Agreement was filed whereby Minix agreed to waive indictment and plead guilty to the Information charging the conspiracy and gun possession counts.  (Doc. 54 at 2.)  Minix further agreed to cooperate in the continuing investigation.  (*Id.*)  To that end, he met with investigators on three occasions, disclosing information about the conspiracy and other criminal activity.  (*Id.*)  He also testified before the grand jury and agreed to testify under oath in any additional proceedings when called upon to do so.  (*Id.*; Doc. 121 at 3.)  In the Plea Agreement, Minix acknowledged as follows:

> [I]n the event the United States, in its sole discretion, determines that he has made any false statement to investigators or attorneys of the United States or willfully failed to disclose information; made any false statements or committed any perjury before a grand jury, before any trial court, or at any other proceeding; had any unauthorized contact with any potential defendants in this case or in cases in which he is a potential witness pursuant to this agreement; or since the date of this agreement, committed any local, state[,] or federal offense; the United States will have the right to: (1) terminate this agreement and prosecute him for any and all offenses, including false statements and perjury, with which he could properly be charged (including reinstatement of any charges dismissed pursuant to this agreement), and (2) terminate only its obligations under this agreement while retaining his guilty plea.

(Doc. 54 at 2–3.)

For its part, the United States agreed that it would not prosecute Minix for any other criminal offenses known to it as of the date the Plea Agreement was signed that were committed by Minix in the District of Vermont relative to the distribution of controlled substances and the unlawful possession of firearms; that it would make the nature, extent, and value of Minix's cooperation known to the court; that it would make a motion for the court to depart from the Sentencing Guidelines pursuant to USSG § 5Kl.l and a motion to allow the court to impose a sentence below any mandatory minimum term of imprisonment pursuant to 18 U.S.C. § 3553(e), if it determined that Minix's cooperation rose to the level of substantial assistance. (*Id.* at 5–6.) The government remained free to make whatever sentencing recommendations it deemed appropriate. (*Id.* at 6.) The government agreed to recommend that Minix receive credit for acceptance of responsibility under Guideline § 3El.l(a) and (b), provided that "no new information comes to the attention of the United States relative to the issue of [Minix] receiving credit

for acceptance of responsibility." (*Id.*)  And finally, the government agreed to move to dismiss the Indictment at the time of sentencing.  (*Id.*)

On September 5, 2013, Minix appeared in district court and consistent with his Plea Agreement pled guilty to the Information charging him with engaging in the conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 and possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3).  At the change of plea hearing, the district court engaged in the complete colloquy required by Fed. R. Crim. P. 11.  (*See* Doc. 82 at 9–17.)  Minix responded to the court's inquiries under oath.  The transcript reveals the following discussion occurred:

> THE COURT: You have filed a plea agreement in this case . . . which the Court intends to accept.  Did you read and discuss each and every paragraph of the plea agreement with your attorney before signing it?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And did Mr. McColgin answer all of your questions with regard to it?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Are you satisfied with his representation?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Is it in fact your signature on the plea agreement?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Did you sign it voluntarily?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Does the plea agreement contain all of your agreements with the government?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Has anyone else made any agreements, promises or representations to you that you are relying on in pleading guilty that are not contained in your plea agreement?
> THE DEFENDANT: No, your Honor.
> THE COURT: Has anyone pressured you, threatened you or coerced you in any manner into entering into the plea agreement or entering a guilty plea?
> THE DEFENDANT: No, your Honor.

> THE COURT: Do you have any questions for me about the plea agreement?
> THE DEFENDANT: No, your Honor.
> THE COURT: You feel that you fully understand its terms and conditions?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Do you understand that the terms of the plea agreement are merely recommendations to the Court and that the Court could reject those recommendations and impose a sentence that is more severe than you expect without allowing you to withdraw your guilty plea?
> THE DEFENDANT: Yes, your Honor.

(*Id.* at 9–11.)

Chief Judge Reiss accepted Minix's pleas of guilty, concluding that Minix was fully capable and competent to enter pleas of guilty and aware of the nature of the charges and consequences of his pleas; and that Minix's pleas were knowing, voluntary, and supported by an independent basis in fact containing each of the essential elements of the charged offenses. (*Id.* at 22.) After accepting the guilty pleas, the Chief Judge ordered preparation of a PSR in anticipation of sentencing. (*Id.* at 23.)

## III.   PSR Process and Motion to Withdraw Guilty Plea

On November 20, 2013, a draft PSR was issued, concluding that Minix faced an advisory Sentencing Guideline range of 360 months to life as a career offender pursuant to USSG § 4B1.1. (PSR at 3, ¶ 6.) It appears that Minix's desire to cooperate began to unravel shortly thereafter, as evidenced by a *pro se* motion he attempted to file in early February 2014–while still represented by Attorney McColgin–seeking to withdraw his guilty pleas. Attorney Kraham now suggests that Minix filed the motion because he "probably panicked" when confronted with the sentencing exposure contained in the draft PSR. (Doc. 121 at 7.)

In the *pro se* motion to withdraw his guilty pleas, Minix claimed, among other things, that "there is no factual basis to support the charged offenses against him" and that his prior grand jury testimony was "tainted" and "based off of old and/or stale information, and guessing due to lack of memory, and rumors he heard from other people making it inaccur[]ate and/or unreliable."  (Doc. 135-1 at 7, 9.)  Minix asserted that he was not guilty of the charges to which he had pled guilty and that he had "simply answered questions in an effort to appeal to the liking[] of the assistant U.S. attorney." (*Id*. at 9.)  The Clerk of Court did not accept Minix's motion for filing, however, because Minix was represented by counsel (Doc. 121-2 at 3); the court instead forwarded the motion to Attorney McColgin.

On February 18, 2014, Attorney McColgin moved to withdraw from representing Minix, stating that "irreconcilable differences" had arisen between them which precluded his continued effective representation of Minix.  (Doc. 78 at 1.)  McColgin stated that he would violate the Vermont Rules of Professional Conduct if he continued to represent Minix.  (*Id.*)

On February 25, 2014, Attorney McColgin's motion to withdraw as counsel was granted and Attorney Kraham was appointed to represent Minix.  (Doc. 121 at 2.)  As subsequently summarized by Kraham, and as discussed above, by the time of this appointment, Minix had already participated in numerous proffers with the government, testified before the grand jury, and entered his pleas of guilty to the two felony violations; also, a draft PSR had been issued.  (*Id.* at 2–3.)

7

Shortly after his appointment as counsel, Kraham received two letters from Minix directing Kraham to proceed with filing the motion to withdraw the guilty pleas. According to Minix, he was innocent of the charged offenses and the information he provided to the government was not true.  In an e-mail dated March 24, 2014, the government advised Kraham that Minix's assertions of innocence were "false" and "significantly undermin[ed] his credibility"; and that Minix's efforts to withdraw from the Plea Agreement constituted a "breach" of the agreement and jeopardized Minix's reduced sentencing for being a cooperator.  (Doc. 121-5.)  The government further informed Kraham that, upon a breach of the agreement, it would have the option to "retain [Minix's] guilty plea but terminate [the government's] own obligations under the agreement and/or prosecute [Minix] for additional offenses."  (*Id.*)  Attorney Kraham later described the situation as follows:

> Minix, through his own actions, had effectively sabotaged his own case. He breached the plea agreement, disavowed his grand jury testimony, jeopardized his § 5K1.1 motion, signed a false affidavit; and as a career offender, with a significant drug quantity, specific offense characteristics involving possession of a firearm, threats of violence (including an armed robbery), obstruction of justice, and with a role in the offense adjustment for being an organizer, leader, manager, or supervisor, his applicable guideline range was 360 months to life, greater than the statutory maximums for both counts run consecutively, and even greater than the Career Offender guideline.

(Doc. 121 at 6.)

Meanwhile, the PSR process continued, and shortly after the issuance of the draft PSR, the government disclosed Minix's grand jury testimony to the probation officer. (PSR at 3, ¶ 6.)  As a result of this disclosure, Minix's scheduled sentencing was

continued, and significant revisions were made to the "Offense Conduct" section of the PSR to include a more complete description of the conspiracy.  Thereafter, a *second* draft PSR was issued, and the offense conduct disclosed therein resulted in an increased offense level calculation.  The revised PSR concluded that Minix's sentencing exposure was statutorily capped at the maximum combined term of 360 months.  (PSR at 28, ¶ 103.)

Upon his appointment as Minix's lawyer, Kraham undertook an extensive effort to "salvage the plea agreement" and repair the damage Minix had caused by his actions. (Doc. 121 at 7.)  After a lengthy meeting, Kraham successfully persuaded Minix to again reverse course and abandon his plan to withdraw from his guilty plea and the Plea Agreement.  (*Id.* at 7–9.)  Kraham also persuaded Minix to renounce his earlier assertions that the information and testimony provided in his prior proffers and grand jury testimony were false.  (*Id.*)  As part of his effort to salvage Minix's advantageous Plea Agreement, Kraham convinced Minix to participate in a *fourth* proffer with the government.  (PSR at 16, ¶ 33.)  Meanwhile, Kraham successfully persuaded the government to abandon its initial position that Minix should be denied the benefit of a substantial-assistance departure under USSG § 5K1.1.  (Doc. 135 at 2.)

## IV.    Sentencing

On October 9, 2014, the government filed a sentencing memorandum and a cooperation letter pursuant to USSG § 5K1.1.  (Doc. 97.)  Despite Minix's obstructive behavior and his false recantation of both his grand jury testimony and first three proffer sessions, the government recommended that Minix should benefit substantially from his

cooperation.  The government concluded that Minix should receive a four-level departure for his cooperation, a three-level adjustment for his manifestation of acceptance of responsibility, and a further departure to account for the fact that his own admissions through the course of his cooperation led to an increase in his offense conduct determination.  The government did not oppose application of an offense-level reduction which had recently been adopted by the United States Sentencing Commission but was not yet in effect at the time.  In sum, the government argued that the court should depart from the resulting Sentencing Guideline range of 292 to 365 months and impose a sentence of 105 months.  (*Id.* at 6.)

Attorney Kraham filed a comprehensive 28-page sentencing memorandum on behalf of Minix which thoroughly reviewed Minix's history and characteristics, including his personal background, criminal history, and history of addiction.  (Doc. 95.)  The memorandum discussed Minix's offense conduct, his early misguided efforts to obstruct justice in the case, and his subsequent and extensive cooperation.  It also included a thorough analysis of the case in relation to the goals of sentencing and the factors set forth in 18 U.S.C. § 3553(a), and Kraham argued in support of a significant departure from the advisory Sentencing Guideline calculation.  Several exhibits were filed with the memorandum, including drug treatment records, letters of support, and statistical trends in federal sentencings.  (*Id.* at 28, Index of Exhibits.)

On October 14, 2014, the court held Minix's sentencing hearing, employing its standard bifurcated practice where a motion pursuant to USSG § 5K1.1 has been filed.

10

(*See* Docs. 103, 103-1.[3])  The government argued that a reduction for Minix's acceptance

of responsibility was warranted, as well as a four-level departure for Minix's cooperation.

The government also supported a further variance/departure to account for the fact that

Minix's offense level had been increased because of Minix's own admissions with

respect to drug quantity.  In both its written presentation and oral argument, the

government noted Minix's cooperation in the prosecution of Devin Richardson, a

coconspirator.  Ultimately, the government again asserted that a sentence of 105 months

was appropriate.  Attorney Kraham, on behalf of Minix, argued for an even greater

departure, noting (among other reasons) that Minix's cooperation had placed Minix at

grave personal danger.  (Doc. 103 at 14–17.)

The court began its analysis at the sentencing hearing by observing that the case

was unique, given the government's motion for a § 5K1.1 departure despite Minix having

attempted to obstruct justice in the investigation and renouncing the veracity of his

statements and testimony provided during that cooperation.  (*Id.* at 3–4, 9–10, 12–14, 16,

20–23; Doc. 103-1 at 3–4.)  The court proceeded to thoroughly review the advisory

Sentencing Guidelines and the statutory sentencing factors set forth in 18 U.S.C. §

3553(a).  (Doc. 103-1 at 30–41.)  Ultimately, the court granted the requested departures

and varied further from the advisory Sentencing Guideline range, agreeing with Attorney

Kraham that a departure that was greater than the one suggested by the government was

warranted.  The court thus imposed a sentence of 87 months, to be followed by a five-

---

[3]  Although the transcript of the sentencing hearing was subject to partial sealing by the court, consideration of the claims raised by Minix now requires review of those proceedings, and, after notice, the record was unsealed by order of the court.  (Doc. 127.)

year term of supervised release.  Finally, the court formally advised Minix of his right to a direct appeal.

No direct appeal was pursued.

## Analysis

### I.   Standards Governing § 2255 Motions

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a). Relief under § 2255 is therefore generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  "The reasons for narrowly limiting the relief permitted under § 2255—a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place—are 'well known and basic to our adversary system of justice.'"  *Bokun*, 73 F.3d at 12 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 & n.11 (1979)); *see also Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  A petitioner who brings a § 2255 motion bears the burden of establishing the claim by a preponderance of the evidence.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## II.      Failure to Receive Sufficient Consideration for Cooperation

Minix first contends that he did not receive sufficient credit at sentencing for his cooperation in the investigation and prosecution of coconspirator Devin Richardson. Minix asserts: "During my sentencing hearing . . . , [I] did not receive credit and/or a reduction [of] my sentence due to my cooperation in the . . . R[ichardson] case." (Doc. 101-1 at 2.) Minix has advanced conflicting claims in support of this assertion. He initially contended that substantial-assistance credit was denied because the government took the position that the Richardson case "was still pending and no conviction was obtained at that time," and because "prosecutor Joseph Perella argued that [his] reduction due to [a] 5K1 motion filed by him is not based on the Richardson case." (*Id.* at 2.) Later, Minix claimed that the government "made no mention of [his] cooperation in the Richardson case within [its] Sentencing Memorandum, and therefore has failed to make the full extent and nature of [his] cooperation known to the court." (*Id*. at 4.)

Regardless of how it is cast, Minix's claim fails because it is both substantively wrong and procedurally barred. First, Minix's factual assertions are simply baseless. Quite plainly, the government's § 5K1.1 cooperation letter submitted to the court described Minix's cooperation in the Richardson investigation and prosecution at length (*see* Doc. 129-1), and the court acknowledged that cooperation at the sentencing hearing (*see* Doc. 103 at 13). Second, as noted above, it has long been recognized that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in

complete miscarriage of justice.'"  *Bokun*, 73 F.3d at 12 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962).  Furthermore, Minix bears the burden to establish the requisite fundamental defect which inherently results in a miscarriage of justice.  *See Galviz Zapata v. United States*, 431 F.3d 395, 399 (2d Cir. 2005) (citing *Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973)).

Here, Minix received a substantial departure for his assistance from the 360-month advisory Sentencing Guideline range called for in the PSR down to a sentence of 87 months and the extent of a downward departure is not subject to review by an appellate court.  *United States v. Doe*, 996 F.2d 606, 607 (2d Cir. 1993); *United States v. Dalton*, 478 F.3d 879, 881 (8th Cir.2007) (extent of downward departure in defendant's favor lies within district court's discretion and is virtually unreviewable on defendant's appeal, absent unconstitutional motive animating district court).  Thus, it follows that Minix's claim—which alleges a non-constitutional error that has not been raised on direct appeal—may not be reviewed in a subsequent § 2255 motion absent a miscarriage of justice.  *See Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996).  Because Minix's claim concerns the extent of his very favorable departure, it does not involve a fundamental defect resulting in a miscarriage of justice nor a purported error of constitutional magnitude.  It therefore is not a cognizable claim under § 2255.

### III.    Ineffective Assistance of Counsel

Next, Minix claims that he received ineffective assistance of counsel from Attorney Kraham.  More precisely, he contends that Kraham failed to inform him that the government had filed a letter with the court at the time of sentencing describing the

nature and extent of his cooperation.  (Doc. 114 at 4.)  He also contends that he was thus "deprived of the opportunity to work with counsel to further develop evidence and arguments to get meaningful substantial[-]assistance relief."  (*Id*.)  Minix asserts that Kraham's sentencing arguments were deficient, as Kraham "did not effectively argue that the alleged diminution in [Minix's] value as a witness hadn't really accrued (i.e., had yet to be disclosed)."  (*Id*.)  Finally, Minix contends that Kraham failed to "discuss with him his appeal rights, issues that could be or needed to be raised on appeal, or the prospect of further or future relief for substantial assistance."  (*Id.*)

To establish ineffective assistance of counsel under the Sixth Amendment, a defendant must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  That is, the defendant "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation."  *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (internal quotation marks omitted).  When considering the first prong of this test—the performance prong— the court "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, a presumption that is overcome only through a showing that counsel failed to act reasonably considering all of the circumstances."  *Id.* (citation and internal quotation marks omitted).  Given this presumption, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  Moreover, "[a]ctions or omissions by counsel that might be considered sound trial

strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (citation and internal quotation marks omitted). "A petitioner may rebut the suggestion that the challenged conduct reflected merely a strategic choice, however, by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* (internal quotation marks omitted).

To establish prejudice under *Strickland's* second prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 763 F.3d at 153 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). Under this test, a habeas petitioner challenging his sentence must show that, but for counsel's ineffectiveness, "there is a reasonable probability that the sentence imposed would have been different." *Herrera-Gomez v. United States*, Nos. 08 Civ. 7299(JGK), 05 Cr. 495(JGK), 2009 WL 4279439, at *5 (S.D.N.Y. Dec. 1, 2009) (citing *United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997)).

### A.    Failure to Disclose § 5K1.1 Letter

As noted above, Minix contends that Kraham never revealed to him that the government had filed a letter with the court detailing his cooperation consistent with his obligation under the Plea Agreement. Minix's Declaration states: "My attorney never

discussed the contents of or showed me the [§ 5K1.1] letter."  (Doc. 114-1 at 5, ¶ 33.)

Minix was in custody while awaiting sentencing.  In his Affidavit, Attorney Kraham

explains that he purposely did not mail the government's letter to Minix because of his

concerns that Minix's personal safety would be at risk if it became known within the

prison facility that Minix had cooperated with law enforcement.  (Doc. 121 at 18.)

Kraham states: "It was my opinion that mailing the 5K letter to Minix would jeopardize

his safety."  (*Id.*)  This type of decision was sound strategy in Kraham's representation of

Minix.  Further, Kraham states that after the government submitted the letter to the court,

he had two telephone conversations with Minix, and during at least one of those

conversations, "we discussed the 5k letter and the government's sentencing

memorandum."  (*Id.*)  According to Kraham, "Minix was informed [of] what the

government was going to argue at his sentencing."  (*Id.*)  In addition, Kraham states that a

copy of the § 5K1.1 letter was at counsel table during the sentencing and available for

Minix's review.  (*Id.* at 20.)  In fact, the court referred to that letter—"the letter you

filed[] about the reasons for [a four-level departure motion and an additional nine-level

variance]"—in its colloquy with the government during the sentencing hearing.  (Doc.

103 at 3.)

When confronted with conflicting factual assertions from a defendant and his

allegedly ineffective counsel, it is within a court's discretion whose version of events to

credit.  *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).  I find that

Attorney Kraham's version of the events is credible.  Kraham's statement that Minix was

fully aware of the contents of the § 5K1.1 letter is implicitly corroborated by the

circumstances of the sentencing.  Kraham's arguments at sentencing were directly focused on the inadequacy of the recommendation set forth in the § 5K1.1 letter.  Minix had been deeply involved in the development of Kraham's sentencing argument as evidenced by his numerous communications with counsel concerning the arguments to be advanced at sentencing.  (Doc. 121-1 through Doc. 121-24.)  It defies logic to conclude that Kraham concealed the contents of the § 5K1.1 letter from Minix or otherwise failed to disclose its contents to Minix, especially considering that the court referenced the letter in Minix's presence at the sentencing hearing.  Minix bears the burden of proof on all claims raised in his motion.  Here, he has failed to meet his burden.

At all steps of this matter, Kraham exercised reasonable professional judgment. Minix has thus failed to satisfy the performance prong of *Strickland*.  Even assuming this prong was met, however, Minix fails to meet the prejudice prong of *Strickland*, because the suggestion that the court would have departed even more than it did, had Minix been made aware of the § 5K1.1 letter, is unsupported speculation.  Minix, classified as a career offender, had participated in a large-scale and destructive drug conspiracy in which he played a leadership role.  He had a significant prior criminal history.  He attempted to obstruct justice early in the investigation and later attempted to falsely renounce his prior testimony given under oath.  The court departed to a sentencing level even greater than that advocated by the government.  To suggest that Kraham could have achieved an even greater departure is meritless.

### B.    Deficient Sentencing Arguments

Next, Minix raises several perceived deficiencies in the sentencing arguments advanced by Attorney Kraham at his sentencing.  A review of the record, however, reveals this contention to be frivolous.  (*See, e.g.*, Docs. 103, 121.)  Minix's claim that his diminution in value as a witness had not accrued because his falsehoods had not been disclosed to counsel for Richardson is meritless.  The record here reveals that not only did Kraham's representation of Minix meet all professional standards, Kraham also achieved superior results for Minix: a sentence that was less than half of what the Sentencing Guidelines advised.  Rather than establishing an ineffective-assistance-of-counsel claim, Minix's claim is simply a renewed effort for a further departure which is devoid of merit.  Regardless, a § 2255 motion is not an opportunity to relitigate issues that have been already decided.

### C.    Failure to File Notice of Appeal

Finally, Minix claims Attorney Kraham was ineffective because he "failed to discuss with him his appeal rights, issues that could be or needed to be raised on appeal, or the prospect of further or future relief for substantial assistance."  (Doc. 114 at 4.)

It is well established that an attorney acts unreasonably by failing to file a notice of appeal despite his client's specific instructions to do so.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (rejecting view that counsel must file a notice of appeal unless a defendant specifically instructs counsel not to do so).  Where a defendant fails to instruct counsel to either file or not file a notice of appeal, the court must first determine whether counsel consulted with the defendant on the issue.  *Id*. at 478; *see United States*

*v. White*, Nos. 09 Civ. 6507(DC), 07 Cr. 848(DC), 2009 WL 3816840, at *2, n.3

(S.D.N.Y. Nov. 13, 2009) (quoting *Flores-Ortega*, 528 U.S. at 478 ("The Supreme Court

has defined 'consult' in this context as 'advising the defendant about the advantages and

disadvantages of taking an appeal, and making a reasonable effort to discover the

defendant's wishes.'")).  If counsel has not consulted with the defendant, then the court

must determine whether that failure "itself constitutes deficient performance."  *Flores-*

*Ortega*, 528 U.S. at 478.

Counsel is constitutionally required to consult with the defendant about an appeal

"when there is reason to think either (1) that a rational defendant would want to appeal

(for example, because there are nonfrivolous grounds for appeal), or (2) that this

particular defendant reasonably demonstrated to counsel that he was interested in

appealing."  *Id.* at 480.  In making this determination, "courts must take into account all

the information counsel knew or should have known."  *Id.*

Here, Minix has not established that he instructed Kraham to file a notice of

appeal or otherwise demonstrated to Kraham that he was interested in appealing.

Moreover, the court does not find that a rational defendant in Minix's position would

have wanted to appeal from his sentence, given the exemplary results counsel achieved at

sentencing.  Thus, Kraham had no constitutional duty to consult with Minix regarding an

appeal, and I recommend finding that Minix's claim of ineffective assistance of counsel

fails under the *Strickland/Flores-Ortega* standard.

**IV.   No Evidentiary Hearing is Required**

In ruling on a § 2255 motion, the district court is required to hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present "facially valid claims").  Section 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  *See Machibroda*, 368 U.S. at 495 (hearing not required where the record "conclusively and expressly belie[s]" defendant's allegations); *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

Here the existing record is sufficient to rule on Minix's § 2255 motion without a hearing.  Minix has utterly failed to show facts that, if proved at a hearing, would warrant the granting of his motion.  Accordingly, no hearing is required.

## Conclusion

For these reasons, I recommend that Minix's § 2255 motion to vacate, set aside, or correct sentence (Docs. 101, 114) be DENIED.  In a proceeding under § 2255, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Thus, a certificate will not issue unless reasonable jurists could debate whether the motion should

have been resolved in a different manner, or the issues are adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Minix has not satisfied this standard. Accordingly, I recommend that a certificate of appealability be DENIED.

I further recommend that the court issue a revised judgment. As noted above, the Amended Judgment reflects that Minix was convicted of possession of a firearm "as a Drug Dealer," rather than as an "unlawful user of a controlled substance," as alleged in the count of conviction, in violation of 18 U.S.C. § 922(g)(3). (*See supra*, at 1, n.1; *see also* Doc. 100 at 1.) This imprecise recitation could be confused with a violation of 18 U.S.C. § 924(c) and should be corrected to avoid future confusion. *See* Fed. R. Crim. P. 36 (clerical errors in a judgment may be corrected at any time). If the court adopts this recommendation, a corrected judgment would not extend the deadline to file a notice of appeal, which has already lapsed. *United States v. Diaz*, 91 F. App'x 362, 363 (5th Cir. 2004); *Happold v. United States*, Civil No. 12–150–DRH, Criminal No. 05–40077–GPM, 2013 WL 6484584, at *1, n.2 (S.D. Ill. Dec. 10, 2013).

Dated at Burlington, in the District of Vermont, this 24th day of August, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).